UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

TROY JACKSON,

    Plaintiff,

v.                                     Case No. 3:14-cv-1319-J-34MCR

OFFICER GRIFFITH AND
SGT. SEAN JOHNSON,

    Defendants.

## ORDER

### I.     Status

Plaintiff Troy Jackson, an inmate in the custody of the Florida Department of Corrections (FDOC), initiated this action on October 24, 2014, by filing a Civil Rights Complaint (Doc. 1) pursuant to 42 U.S.C. § 1983. Jackson is proceeding on an Amended Complaint (Amended Complaint; Doc. 12) with exhibits filed on September 4, 2015. In the Amended Complaint, Jackson names as defendants Officer Griffith[1] and Sgt. Sean Johnson (collectively Defendants). Jackson asserts that Defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. As relief, Jackson seeks compensatory and punitive damages.

On January 19, 2017, Johnson filed a Motion to Dismiss (Motion; Doc. 37), with exhibits (Def. Ex.). In the Motion, Johnson argued that the Amended Complaint should be dismissed because Jackson failed to exhaust his administrative remedies. The Court

---

[1] In the Amended Complaint, Jackson incorrectly spells Defendant's name as "Griffin." See Return of Service (Doc. S-28).

advised Jackson of the provisions of Federal Rule of Civil Procedure 56, notified him that the granting of a motion to dismiss or a motion for summary judgment would represent a final adjudication of this case which may foreclose subsequent litigation on the matter, and gave him an opportunity to respond to the Motion. See Order of Special Appointment; Directing Service of Process upon Defendants; Notice to Plaintiff (Doc. 19.). On March 21, 2017, Jackson filed his response to Johnson's Motion. See Plaintiff's Reply to the Defendant's Motion to Dismiss (Johnson Response; Doc. 53). Griffith then filed a Motion to Adopt Defendant Johnson's Previously Filed Motion to Dismiss (Motion to Adopt; Doc. 56) on April 5, 2017. Jackson did not oppose Griffith's request; instead, he filed a response to the Motion to Adopt in which he presented arguments substantially similar to those he made in opposing Johnson's Motion seeking dismissal on the basis of his alleged failure to exhaust the Johnson Response. See Plaintiff's Reply to the Defendant's Motion to Dismiss (Griffith Response; Doc. 59). As Jackson did not oppose Griffith's request to adopt Johnson's Motion, the Court will **GRANT** Griffith's motion to adopt in this limited circumstance.[2] In light of the substantial similarity between Jackson's responses to the Motion, the Court will refer to both responses collectively as the Response. Defendants' Motion is ripe for review.

## II. Jackson's Allegations

In his verified Amended Complaint,[3] Jackson states that:

---

[2] In the future, Griffith is cautioned that he cannot adopt or incorporate by reference arguments made by other parties. Instead, he must file his own independent motions setting forth his arguments.

[3] See Stallworth v. Tyson, 578 F. App'x 948, 950 (11th Cir. 2014) (citations omitted) ("The factual assertions that [Plaintiff] made in his amended complaint should have been given the same weight as an affidavit, because [Plaintiff] verified his complaint with an

2

On March 17, 2014 Plaintiff Troy Jackson, along with Inmate Kenneth Dupree #569262 (hereinafter Dupree), were housed in F-Dormitory, cell F1-103, at Columbia Correctional Institution (CCI). At approximately 2330 hrs Plaintiff began suffering a severe asthma attack. Dupree, upon witnessing Plaintiff[']s struggle to draw a breath, began kicking and pounding on the cell door in what turned out to be a vain attempt to gain the attention of the Defendants, Officer Griffin, [sic] and Sgt. Johnson in the F Dorm officer's station. Dupree has submitted a sworn affidavit asserting his failure to alert the Defendants (Griffin [sic] and Johnson) and the fact that the Plaintiff (Jackson) was suffering an extreme asthma attack. Inmate Xavier Roberts, housed in cell F1-102 at the time of the incident is also a witness. . . .

From approximately 2330 hrs on March 17, 2014 until 0155 hrs on March 18, 2014, Plaintiff Jackson stood at the window of F1-103 struggling to breathe when he noticed Defendant Griffin [sic] standing outside in front of F Dorm smoking a cigarette. Plaintiff then informed Griffin [sic] that he was having a severe asthma attack and declared a medical emergency.

Defendant Griffin [sic] verified Plaintiff's statement by asking: "you said you're having an asthma attack?" Plaintiff replied "yes."

Following that verification, Griffin [sic] proceeded to return to the F-Dorm officer's station where he remained, along with Defendant Johnson, effectively ignoring Plaintiff, until 0430 hrs when the cell lights were turned on and the cell doors opened in preparation for the morning meal. Griffin's [sic] refusal to act was also witnessed by Dupree and Roberts.

Defendant Griffin [sic] intentionally refused to act on a declared/known medical emergency violating Plaintiff's right not to be subjected to cruel and unusual punishment pursuant to the Eighth Amendment of the United States Constitution, as well as with deliberate indifference to the emergency situation at hand.

Upon the cell doors being opened, Plaintiff exited his cell and repeated his request to declare a medical emergency

---

unsworn written declaration, made under penalty of perjury, and his complaint meets Rule 56's requirements for affidavits and sworn declarations.").

to Defendant Griffin [sic] who then turned to Defendant Johnson, the F Dorm supervisor, and spoke to him.

Following the brief exchange, Sgt. Johnson told Plaintiff: "Just because you're having an asthma attack doesn't mean I have to take you to medical or call medical! /Go back inside and go to medical when they call chow!" (Breakfast).

Defendant Johnson intentionally denied Plaintiff access to emergency medical care, violating Plaintiff's rights, and constitutes cruel and unusual punishment pursuant to the Eighth Amendment of the United States Constitution. Further, deliberate indifference was shown by Sgt. Johnson's intentional delay/denial of emergency medical care.

At this time, Plaintiff's potentially life-threatening medical emergency had been improperly delayed for approximately five (5) hours and ten (10) minutes, constituting deliberate indifference.

At 0442 hrs Defendant Griffin [sic] told Plaintiff: "When we call chow for the insulin (diabetic) inmates, you can go to medical then."

Defendant Griffin [sic] effectively continued to delay Plaintiff the necessary emergency medical care he desperately needed.

Approximately eighteen (18) minutes later, Plaintiff finally made it to the medical department where he collapsed on a bench in the lobby area and had to be physically assisted to the triage examination room by an officer for the initial medical evaluation.

Upon being examined by the triage nurse, she reported in detail of Plaintiff's "respiratory distress level" (severe), also noting that the Plaintiff's left and right upper and lower chest lobes were tight. The gravity of such a condition prompted a phone call to off-duty physician, Dr. Marcello at around 0505 hrs. Dr. Marcello prescribed the following treatment: he directed the nurse to administer an injection of prednisone; place Jackson on oxygen; give him an I.V.; and to administer breathing treatments every three (3) hours. Plaintiff was subsequently admitted to the infirmary where he remained for approximately thirty-three (33) hours. . . .

4

> Both Defendants knew of Plaintiff's medical condition and did not respond to it in a professional, proper, or reasonable manner. Both Defendants, Griffin [sic] and Johnson, failed to provide the needed access to medical care within a critical period of time, the indifference of which resulted in damages that otherwise would not have occurred had they acted on Plaintiff's initial declaration of a medical emergency and need for emergency treatment in lieu of the over-five-hour delay.

Amended Complaint at 5-8.

### III. Motion to Dismiss Standard

In ruling on a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002); see also Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002). In addition, all reasonable inferences should be drawn in favor of the plaintiff. See Randall v. Scott, 610 F.3d 701, 705 (11th Cir. 2010). Nonetheless, the plaintiff must still meet some minimal pleading requirements. Jackson v. Bellsouth Telecomm., 372 F.3d 1250, 1262-63 (11th Cir. 2004) (citations omitted). Indeed, while "[s]pecific facts are not necessary[,]" the complaint should "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Further, the plaintiff must allege "enough facts to state a claim that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Twombly, 550 U.S. at 555 (internal quotations omitted); see also Jackson, 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (internal citation and quotations omitted). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[,]" which simply "are not entitled to [an] assumption of truth." See Iqbal, 556 U.S. at 678, 680. Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face[.]'" Id. at 678 (quoting Twombly, 550 U.S. at 570). And, while "[p]ro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed," Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998), "'this leniency does not give the court a license to serve as de facto counsel for a party or to rewrite an otherwise deficient pleading in order to sustain an action.'" Alford v. Consol. Gov't of Columbus, Ga., 438 F. App'x 837, 839 (11th Cir. 2011)[4] (quoting GJR Invs., Inc. v. Cty. of Escambia, Fla., 132 F.3d 1359, 1369 (11th Cir. 1998) (internal citation omitted), overruled in part on other grounds as recognized in Randall, 610 F.3d at 706).

---

[4] "Although an unpublished opinion is not binding . . . , it is persuasive authority." United States v. Futrell, 209 F.3d 1286, 1289 (11th Cir. 2000) (per curiam); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

6

## V. Summary of the Arguments

In the Motion, Defendants request dismissal of Jackson's claims against them because Jackson failed to exhaust his administrative remedies, as required by the Prison Litigation Reform Act (PLRA), before filing the instant 42 U.S.C. § 1983 lawsuit. Motion at 1-3. According to Defendants:

> Here, perusal of all grievances filed by Plaintiff from March 1, 2014 through July 16, 2014 at the institutional level, and perusal of all grievance appeals filed by Plaintiff which were received at Central Office from March 1, 2014 through July 1, 2014, reveals that Plaintiff did not properly exhaust administrative remedies prior to bringing the instant lawsuit. Plaintiff filed two grievances from March 1, 2014 through July 16, 2014 at the institutional level generally concerning the matters at issue in this case.: log # 1404-201-143 and #1407-201-076. Log # 1404-201-143 was denied. [L]og #1407-201-076 response indicates that this grievance was "returned without action" and the reason given was due to the issue being addressed in log # 1404-201-143.
>
> Plaintiff filed only one grievance appeal that was received at Central Office from March 1, 2014 through July 1, 2014.
>
> > **Log # 14-6-17175**: The response in this grievance appeal indicates that Plaintiff's grievance was "returned without action" because of Plaintiff's failure to comply with Chapter 33 in that Central Office did not receive Plaintiff's grievance appeal within 15 days of the institutional response.
>
> Plaintiff's institutional grievances concerning the matters at issue in the instant case were either denied or returned without action, therefore, Plaintiff did not exhaust his administrative remedies at the institutional level. See Ex. A. Plaintiff's grievance appeal concerning the matters at issue in the instant case was returned without action due to Plaintiff's failure to comply with administrative rules, therefore, Plaintiff did not exhaust his administrative remedies at the grievance appeal level either. Accordingly, Plaintiff did not properly

7

exhaust his administrative remedies prior to bringing the instant action and his complaint must be dismissed.

Motion at 3 (record citations omitted).

In his Response, Jackson maintains that he did exhaust all of his administrative remedies. Response at 3-9. In support, he sates, under penalty of perjury, that:

> 1. On 3/24/14, Plaintiff filed an informal Grievance on Sgt. Sean Johnson and Officer Griffith for failure to respond to a medical emergency.
>
> 2. Plaintiff never received a response to his informal Grievance under rule and procedures of Ch. 33-F.A.C. inmates are allowed to go to the next step if they failed to respond to an informal Grievance.
>
> 3. Plaintiff filed a Formal Grievance on 4/22/14, on Sgt. Sean Johnson and Officer Griffith for failure to respond to a medical emergency and Plaintiff stated in his formal Grievance that he filed an informal Grievance on 3/24/14, and Defendants failed to give a response.
>
> 4. On or about 5/7/14 Plaintiff received a response to his formal grievance.
>
> 5. On or about 5/21/14 Plaintiff filed an appeal to the secretary of the Florida Department of Corrections.
>
> 6. On or about 5/30/14, the Department of corrections returned Grievance to Plaintiff without action.
>
> 7. Plaintiff asserts that per Ch. 33-, F.A.C. [sic] inmates have (15) days to file an appeal to the warden, assistant warden or secretary of Department of Corrections.
>
> 8. And appeal to the secretary of Department of corrections, timely according to the "Rules of Ch. 33-F.A.C."
>
> 9. Plaintiff has proven that all Grievances and appeal was [sic] filed within the (15) days that's required by rules and procedures of Ch[.] 33-F.A.C.
>
> 10. Plaintiff filed an inform[al] grievance on 3/24/14, after waiting without getting a response, Plaintiff moved to the

8

> next step and filed a formal grievance which is allowed per Ch. 33-103.005.
>
> 11.  Plaintiff, filed his formal Grievance on 4/22/14, a response was filed on 5/7/14. Plaintiff has (15) days to file an appeal to the secretary of Department of corrections. Plaintiff filed his appeal to the secretary of Department of corrections on 5/21/14, within the (15) days.
>
> 12.  Plaintiff has exhausted all administration [sic] remedies before filing his 1983 civil right complaint.

Id. at 8-9 (citations omitted).

## VI. Exhaustion of Administrative Remedies

### 1. Exhaustion

The PLRA requires an inmate wishing to challenge prison conditions to first exhaust all available administrative remedies before filing an action under 42 U.S.C. § 1983. See 42 U.S.C. § 1997e(a). Nevertheless, a prisoner such as Jackson is not required to plead exhaustion. See Jones v. Bock, 549 U.S. 199, 216 (2007). Instead, the United States Supreme Court has recognized "failure to exhaust is an affirmative defense under the PLRA[.]" Id. Notably, exhaustion of available administrative remedies is "a precondition to an adjudication on the merits" and is mandatory under the PLRA. Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008). Not only is there an exhaustion requirement, "the PLRA exhaustion requirement requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 93 (2006).

> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims. Administrative law does this by requiring proper exhaustion of administrative remedies, which "means using all steps that the agency holds

9

out, and doing so properly (so that the agency addresses the issues on the merits)." Pozo,[5] 286 F.3d, at 1024. . . .

Woodford, 548 U.S. at 90. And, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules . . . ." Id. As such, the United States Supreme Court has emphasized:

> Courts may not engraft an unwritten "special circumstances" exception onto the PLRA's exhaustion requirement. The only limit to § 1997e(a)'s mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are "available."

Ross v. Blake, 136 S.Ct. 1850, 1862 (2016).

The determination of whether an inmate exhausted his available administrative remedies prior to filing a cause of action in federal court is a matter of abatement and should be raised in a motion to dismiss, or be treated as such if raised in a summary judgment motion. Bryant, 530 F.3d at 1374-75 (citation omitted). The Eleventh Circuit has explained the two-step process that the Court must employ when examining the issue of exhaustion of administrative remedies.

> After a prisoner has exhausted the grievance procedures, he may file suit under § 1983. In response to a prisoner suit, defendants may bring a motion to dismiss and raise as a defense the prisoner's failure to exhaust these administrative remedies. See Turner, 541 F.3d at 1081.[6] In Turner v. Burnside we established a two-step process for resolving motions to dismiss prisoner lawsuits for failure to exhaust. 541 F.3d at 1082. First, district courts look to the factual allegations in the motion to dismiss and those in the prisoner's response and accept the prisoner's view of the facts as true. The court should dismiss if the facts as stated by the prisoner show a failure to exhaust. Id. Second, if dismissal is not warranted on the prisoner's view of the facts, the court makes

---

[5] Pozo v. McCaughtry, 286 F.3d 1022 (7th Cir. 2002).
[6] Turner v. Burnside, 541 F.3d 1077 (11th Cir. 2008).

> specific findings to resolve disputes of fact, and should dismiss if, based on those findings, defendants have shown a failure to exhaust. Id. at 1082–83; see also id. at 1082 (explaining that defendants bear the burden of showing a failure to exhaust).

Whatley v. Warden, Ware State Prison, 802 F.3d 1205, 1209 (11th Cir. 2015); see Pavao v. Sims, 679 F. App'x 819, 823-24 (11th Cir. 2017) (per curiam).

### 2. Florida's Prison Grievance Procedure

The FDOC provides an internal grievance procedure for its inmates. See FLA. ADMIN. CODE r. 33-103.001 through 33-103.018. Generally, to properly exhaust administrative remedies, a prisoner must complete a three-step sequential process. First, an inmate must submit an informal grievance to a designated staff member at the institutional level. See FLA. ADMIN. CODE r. 33-103.005. If the issue is not resolved, the inmate must submit a formal grievance at the institutional level. See FLA. ADMIN. CODE r. 33-103.006. If the matter is not resolved at the institutional level, the inmate must file an appeal to the Office of the Secretary of the FDOC. See FLA. ADMIN. CODE r. 33-103.007.

Florida Administrative Code Rule 33-103.011 provides time frames for submission of grievances. Generally, the following time limits are applicable. Informal grievances must be received within twenty days from the date on which the incident or action that is the subject of the grievance occurred. See FLA. ADMIN. CODE r. 33-103.011(1)(a). Formal grievances must be received no later than fifteen days from the date of the response to the informal grievance. See FLA. ADMIN. CODE r. 33-103.011(1)(b). Similarly, grievance appeals to the Office of the Secretary must be received within fifteen

days from the date the response to the formal grievance is returned to the inmate. See

FLA. ADMIN. CODE r. 33-103.011(1)(c). Rule 33-103.011(2) provides:

> An extension of the above-stated time periods shall be granted when it is clearly demonstrated by the inmate to the satisfaction of the reviewing authority as defined in paragraphs 33-103.002(15)((b) and (c), F.A.C., or the Secretary that it was not feasible to file the grievance within the relevant time periods and that the inmate made a good faith effort to file in a timely manner. The granting of such an extension shall apply to the filing of an original grievance or when re-filing a grievance after correcting one or more deficiencies cited in rule 33-103.014, F.A.C.

FLA. ADMIN. CODE r. 33-103.011(2). Additionally, Rule 33-103.011(4) states:

> The time limit for responding to grievances and appeals may be extended for a reasonable period agreeable to both parties if the extension is agreed to in writing by the inmate. Unless the grievant has agreed in writing to an extension, expiration of a time limit at any step in the process shall entitle the complainant to proceed to the next step of the grievance process. If this occurs, the complainant must clearly indicate this fact when filing at the next step. If the inmate does not agree to an extension of time at the central office level of review, he shall be entitled to proceed with judicial remedies as he would have exhausted his administrative remedies. The Bureau of Policy Management and Inmate Appeals will nevertheless ensure that the grievance is investigated and responded to even though an extension has not been agreed to by the inmate.

FLA. ADMIN. CODE r. 33-103.011(4).

According to Rule 33-103.014, an informal grievance, formal grievance, direct grievance, or grievance appeal "may be returned to the inmate without further processing if, following a review of the grievance, one or more ... conditions are found to exist." FLA. ADMIN. CODE r. 33-103.014(1). The rule provides an enumerated list as "the only reasons for returning a grievance without a response on the merits." See FLA. ADMIN.

12

CODE r. 33-103.014(1)(a)-(y). Some of the reasons for returning a grievance are as follows: untimeliness; the grievance "addresses more than one issue or complaint" or "is so broad, general or vague in nature that it cannot be clearly investigated, evaluated, and responded to" or "is not written legibly and cannot be clearly understood" or is a supplement to a previously-submitted grievance that has been accepted for review; and the inmate "did not provide a valid reason for by-passing the previous levels of review as required or the reason provided is not acceptable," or "used more than two (2) additional narrative pages." See FLA. ADMIN. CODE r. 33-103.014(1)(a), (b), (c), (f), (q), (t).

### 3. Jackson's Exhaustion Efforts

At this point, the Court notes that the Eleventh Circuit reversed and remanded this action because the Court dismissed this case based on the first step of the Turner analysis. See Doc. 74 at 3. The Eleventh Circuit explained Jackson's allegations as follows:

> To exhaust his administrative remedies, Jackson was required to appeal the denial of his formal grievance within fifteen days of the date he received notice that the formal grievance was denied. See Fla. Admin. Code § 33-103.07(1) (April 20, 2014) (providing that the third and final step of the administrative review process involves filing an appeal with the Office of the Secretary of the Florida Department of Corrections); id. § 103.011(1)(c) (providing that such appeals "must be received within 15 calendar days from the date the response to the formal grievance is returned to the inmate"). Jackson alleged he received notice on May 7, 2014. And he alleged he submitted an appeal on either May 21 or 22, 2014- that is, within fifteen days of the date he received notice.
>
> But the district court found that Jackson did not dispute that he submitted an untimely appeal. The court ruled the appeal was filed on the date that prison officials noted Jackson's appeal as *received*, instead of the date Jackson *submitted* it. See Fla. Admin. Code § 103.007(3)(a) (April 20, 2014) (providing that, to determine that timeliness of an

appeal, a prison official compares the receipt date on the appeal form with the return date on the formal grievance). A prison official dated Jackson's appeal as received on May 27, 2014, thus making it untimely if the official's dating was controlling.

However, there is a dispute of fact, so the district court erred in resolving this case at Turner's first step. Jackson's allegations and arguments, liberally construed, suggest that his appeal was marked as received on May 27 because prison officials failed to comply with procedural rules for collecting and logging grievances. Florida law requires that a prison official collect and log grievances Monday through Friday. See Fla. Admin. Code § 33-103.006(2)(h) (April 20, 2014) (providing that "[g]rievances and appeals shall be picked up and forwarded by the institutions daily Monday through Friday"); id. § (8)(c) (providing that "the staff person designated to accept the grievance . . . shall . . . [c]omplete the receipt portion of [the appeal form] being forwarded to central office by entering a log/tracking number and date of receipt and sign as the recipient"). Jackson alleges that he put the grievance in the designated collection box on Wednesday, May 21 or Thursday, May 22, 2014. Taking Jackson's allegations as true, the grievance process was unavailable to him. See, e.g., Bryant v. Rich, 530 F.3d 1368, 1373 (11th Cir. 2008) (holding that denying access to grievance forms can make an administrative remedy unavailable). Had the required collection and logging procedures been followed, Jackson's appeal would have been logged as submitted and received on May 21 or May 22, 2014 and would thus have been timely.

As a result, the district court erred when it found that Jackson did not allege the grievance process was unavailable and in ruling that Jackson's complaint was subject to dismissal at the first step of the Turner analysis. See Turner, 541 F.3d at 1082 (citing Bryant, 530 F.3d at 1373-74, and suggesting that disputes about the availability of administrative remedies are questions of fact that can bar dismissal at Turner's first step). On remand, the district court should proceed to the second step of the Turner analysis.

Id. at 3-5.

Pursuant to the Eleventh Circuit's Mandate, the Court now focuses on Jackson's appeal of the denial of his formal grievance. Defendants attached as an exhibit to the Motion Jackson's request for administrative remedy or appeal, log # 1404-201-143. See Doc. 37-2 at 5-6. The form includes Jackson's reasons for seeking an appeal and reflects that he hand-wrote the date of May 21, 2014, next to his signature. Id. However, the portion of the form regarding receipt of the appeal by a prison official reflects that a prison official wrote that Jackson submitted the appeal form on May 27, 2014. Id. at 5. A date stamp at the top of the form also reflects that the Department of Corrections received the request for administrative appeal on May 29, 2014. Id.

The Court finds that Defendants have failed to meet their burden under the second step of the Turner analysis. See Whatley, 802 F.3d at 1209. Other than the appeals form Jackson filed, which contains conflicting dates, Defendants have provided no evidence to contradict Jackson's sworn assertions in the Amended Complaint and the Response to the Motion that he submitted his appeal on either May 21 or May 22, 2014. The May 27, 2014 receipt date does not refute Jackson's sworn assertions, as the receipt date could merely reflect the day on which prison officials retrieved Jackson's appeal from the locked grievance box. Accordingly, in light of the evidence available to the Court, Defendants' Motion is due to be denied.

**VII.   Jackson's Motion for Summary Judgment**

On February 16, 2017, Jackson filed a pro se Motion for Summary Judgment. Doc. 44. Defendants filed a Response in Opposition to Plaintiff's Motion for Summary Judgment on April 14, 2017. Doc. 58. Jackson filed a brief in reply on April 25, 2017. Doc.

61. In the July 28, 2017 Order, the Court granted Defendants' Motion to Dismiss and also denied Jackson's Motion for Summary Judgment as moot. Doc. 63 at 8.

Given the procedural posture of this case and the passage of time, the Court will deny Jackson's Motion for Summary Judgment without prejudice to his right to re-file it after Defendants have answered his Amended Complaint. Thereafter, the Court will issue a separate order setting deadlines for discovery and the filing of dispositive motions, including motions for summary judgment.

In consideration of the foregoing, it is now

**ORDERED**:

1. Defendant Griffith's Motion to Adopt Defendant Johnson's Previously Filed Motion to Dismiss (Doc. 56) is **GRANTED**.

2. Defendants' Motion to Dismiss (Doc. 37) is **DENIED**.

3. Jackson's Motion for Summary Judgment (Doc. 44) is **DENIED without prejudice** to Jackson's right to refile.

4. Defendants must file their answers to Jackson's Amended Complaint by August 30, 2019. Thereafter, the Court will issue a separate order setting deadlines for discovery and the filing of dispositive motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 12th day of August, 2019.

MARCIA MORALES HOWARD
United States District Judge

Jax-8
C:
Troy Jackson, FDOC #683942
Counsel of Record

16